# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **STEPHON JAMES** <br>     **LA. DOC. # 101633** <br> **VS.** | **CIVIL ACTION NO. 08-0690** <br><br> **SECTION P** <br><br> **JUDGE JAMES** |
| **ROBERT TAPPIN, ET AL.** | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Stephon James, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on May 12, 2008. Plaintiff, an inmate in the custody of Louisiana's Department of Public Safety and Corrections, is currently incarcerated at the Allen Corrections Center, Kinder, Louisiana; however, he complains that he was denied access to the courts during the period of time that he was incarcerated at the Morehouse Parish Detention Center (MPDC), Collinston, Louisiana. He further complains that MPDC authorities failed to acknowledge his prisoner grievances. Plaintiff seeks a declaratory judgment and compensatory damages for mental or emotional injuries. Plaintiff has sued MPDC Warden Robert Tappin, Assistant Warden Isaac Brown, and Lieutenant Brad Fife. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous or for failing to state a claim for which relief may be granted in accordance with 28 U.S.C. §§1915 and 1915A.

*Statement of the Case*

On August 17, 2006, petitioner pled guilty to worthless check and drug charges in Louisiana's Twenty-Second Judicial District Court, St. Tammany Parish. He was also adjudicated an habitual offender (see La. R.S.15:529.1) and ultimately sentenced to serve sentences totaling 15-years. [rec. doc. 5, Exhibit A, pp. 9-13] On October 12, 2006, plaintiff was transferred from the St. Tammany Parish Jail to the Tensas Parish Detention Center; on October 27, 2006, he was transferred to the Morehouse Parish Jail. On January 3, 2007, he was transferred to the Morehouse Parish Detention Center where he remained until March 25, 2008. [rec. doc. 5, pp. 14-17]

Sometime prior to April 19, 2007, plaintiff requested legal research materials from the Louisiana Supreme Court's Law Library of Louisiana. On April 19, 2007, the Law Library provided plaintiff with some, if not all, of the items requested. [rec. doc. 5, p. 28[1]] Sometime in June 2007 plaintiff drafted what purports to be an Administrative Remedies Procedure Grievance by which it was alleged that he was denied his right of access to the courts because the prison law library was deficient. [rec. doc. 5, pp. 37-39[2]]

Sometime prior to June 5, 2007, plaintiff again requested items from the Law Library of Louisiana. On June 5, 2007, the Library provided some, but not all of the documents requested. [rec. doc. 5, p. 33][3]

---

[1] Plaintiff provided a copy of the Law Library's response, but did not include a copy of his request.

[2] The document purporting to be an ARP is unsigned and undated and provides a signature blank for an inmate named "John Doe" whose prisoner number is "88888."

[3] Plaintiff provided a copy of the Law Library's response, but did not include a copy of his request.

Sometime prior to June 15, 2007, plaintiff requested copies of the Supreme Court's form for Applications for Post-Conviction Relief. On June 15, 2007, the Supreme Court sent the requested copies to plaintiff. [rec. doc. 5, p. 40]

Plaintiff signed an Application for Post-Conviction Relief and supporting memorandum on June 14, 2007. [rec. doc. 5, pp. 55 and 65[4]] Plaintiff raised the following claims relative to his adjudication and sentence as a multiple offender: (1) Louisiana's Habitual Offender statute is violative of the prohibition against double jeopardy; (2) the cleansing period set forth in the Habitual Offender statute had expired prior to plaintiff's adjudication and the State's use of a longer cleansing period enacted after plaintiff's conviction violated the prohibition against ex post facto laws; (3) the Habitual Offender statute is unconstitutional and therefore the Louisiana District Court exceeded its jurisdiction when it adjudicated plaintiff; (4) plaintiff was not adequately advised of his rights prior to admitting his status as an Habitual Offender. [rec. doc. 5, pp. 51-58] He supported the form application with a seven page hand-written Memorandum which cited numerous United States Supreme Court and other federal and state cases and statutes in support of the various arguments. [rec. doc. 5, pp. 59-65]

On July 30, 2007, plaintiff corresponded to the Louisiana First Circuit Court of Appeals; on August 15, 2007, the Clerk of that Court returned plaintiff's letter and/or pleading unfiled noting that plaintiff's pleading was addressed to the District Court. The Court also declined to provide legal advice or forms. [rec. doc. 5, p. 66]

---

[4] In his amended complaint, Plaintiff alleged, "On June 7, 2007 Plaintiff wrote the Supreme Court of Louisiana for an application for post conviction relief forms, because Morehouse Parish Detention Center did not provide any." [rec. doc. 5, p. 4] He does not, however, explain why his pleading was dated one day before the Supreme Court supplied him with the post-conviction application form.

3

On August 16, 2007, the State filed an Answer to the application for post-conviction relief. [rec. doc. 5, pp. 67]

Sometime in August, 2007, plaintiff, through a fellow inmate, Anthony Antwine Arline, requested copies of six cases from the Law Library of Louisiana. [rec. doc. 5, p. 36] On September 20, 2007, the Law Library responded by providing the copies requested. [rec. doc. 5, p. 31]

On September 17, 2007, while the Application remained pending in the District Court, plaintiff submitted a pro se "Application for Writ of Supervisory Control of Post-Conviction Relief from the District Court..." to the Louisiana First Circuit Court of Appeals. [rec. doc. 5, pp. 70-80] Among other things, plaintiff alleged that the "... District Court still failed to respond to the facts alledged [sic] in the original application /memorandum..." [rec. doc. 5, p. 71] The pleading was received and filed in the First Circuit on September 17, 2007 and assigned that court's docket number 2007-KW-1844. [rec. doc. 5, p. 81]

In October 2007 plaintiff requested copies of Louisiana cases and statutes and a United States Supreme Court case. He also requested "a guide that would help me file supervisory writs and suplimental [sic] writs..." and a copy of Rule 11(B)(1). [rec. doc. 5, p. 34] On November 8, 2007 the Law Library of Louisiana responded by providing all of the cases requested by plaintiff; however they were unable to provide the "guide" he requested and were uncertain as to the nature of the Rule he requested. [rec. doc. 5, p. 29]

Again in October 2007, a fellow inmate, Rodriguez Williams, requested copies of Louisiana cases and a copy of Article 2 of the Louisiana Constitution from the Law Library of Louisiana. [rec. doc. 5, p. 35] On November 20, 2007, the Law Library of Louisiana responded

by providing all of the information requested. [rec. doc. 5, p. 32]

Meanwhile, on October 4, 2007, the District Court denied relief on plaintiff's application for post-conviction relief. The judgment was filed on October 11, 2007. [rec. doc. 5, p. 82]

On November 28, 2007, the First Circuit, which had construed plaintiff's Application for Writ of Supervisory Control of Post-Conviction Relief from the District Court as a application for mandamus, denied relief noting that the District Court had in fact acted on plaintiff's application for post conviction relief. See State of Louisiana v. Stephon James, Docket Number 2007-KW-1844. [rec. doc. 5, p. 83]

On or about December 6, 2007, plaintiff corresponded with the Clerk of the First Circuit Court of Appeals. [rec. doc. 5, pp. 84-85] On December 13, 2007, the Clerk of the First Circuit Court of Appeals advised plaintiff that a decision had been rendered on his writ application, No. 2007-KW-1844, on November 28, 2007; the Clerk also returned unfiled the plaintiff's correspondence advising plaintiff that the Clerk was unable to provide legal assistance or the answer to plaintiff's questions. [rec. doc. 5, p. 86]

On or about January 18, 2008, plaintiff mailed pleadings to the Louisiana Supreme Court; these pleadings were assigned Docket Number 2008-KH-342. [rec. doc. 5, p. 87] The pleadings were entitled "Application for 'Writ' Supervisory Writ of Review and Control." This 14 page hand-written brief raised all of the claims raised in plaintiff's application for post-conviction relief. [rec. doc. 5, pp. 88-101] On some unspecified date, plaintiff filed another pleading in the Louisiana Supreme Court entitled, "Memorandum in Support of Motion and Order to Resubmit Application for Post Conviction Relief to Court of Appeal, First Circuit, State of Louisiana and Voluntarily Dismiss No. 2008-KH-342. This 3 page type-written pleading explained that plaintiff

5

believed the State's answer filed in the District Court was the Court's judgment and that by his application filed in the First Circuit he sought review of the denial of his application and not mandamus. He asked the Supreme Court to allow him to resubmit his application for post-conviction relief in the First Circuit with the assistance of inmate substitute. [rec. doc. 5, pp. 102-104]

Sometime prior to February 25, 2008, inmate Charles Bates requested additional copies of case law/statutes from the Law Library of Louisiana on plaintiff's behalf. [5] On February 25, 2008, the Law Library apparently provided the documents requested. [rec. doc. 5, p. 30]

Plaintiff signed his federal complaint on May 10, 2008. [rec. doc. 1, p. 4] It was received and filed on May 15, 2008. In his original complaint, Plaintiff claimed that inadequacies of the MPDC law library prevented him from filing "an adequate and suitable post-conviction relief application."[6]

In the amended complaint, plaintiff alleged "On June 14, 2007, Plaintiff filed an inadequate application for post conviction relief that was destined to fail from the very beginning: Because of the inadequate law library, plaintiff test for claims were plagiarized, nor did he state the facts for each claim as required, and most of all he cited cases from 1873, 1944, 1966, 1969, 1970, and 1977, federal cases from Morehouse law library. The state cases that came from the Law Library of Louisiana; 1983, 1996, 1999, and 2001 also placed plaintiff at a disadvantage at Morehouse, because of the change in law and court ruling plaintiff had no way of

---

[5] Plaintiff provided a copy of the Law Library's response, but did not include a copy of his request.

[6] More specifically plaintiff complained that there were no persons trained in law to assist the inmates; no self-help manuals; no federal annotated law books; no dictionaries; no "case citations;" no computers or typewriters; no books to help inmates file meaningful documents; no Southern Reporters. [rec. doc. 1, p. 5]

determining precedence via Shepard's or any other research material." [rec. doc. 5, pp. 4-5] He also claimed, "Like the filed PCR, Plaintiff's supposed appeal was destined to failed [sic] due to MPDC's inadequate law library..." [rec. doc. 5, p. 5] Finally, plaintiff provided affidavits executed by himself and other MPDC inmates which stated: (1) Between January 3, 2007, thru March 25, 2008, MPDC had no trained inmate legal counsel and did not provide anyone with legal skills to provide legal assistance to inmates; (2) the law library consisted of approximately 14 books including a 2007 edition of the Louisiana Code of Criminal Procedure, the Code of Civil Procedure, various "federal and state" law books, and Black's Law Dictionary; (3) a shelf of Federal Reporters and Federal Supplements; (4) no copies of Southern Reporters, no Rules of Court, no Shepard's, no "Constitutional Statutes," no Louisiana Digests, no "annotated books," no "regular dictionary," and no typewriter, computer, or stapler, (5) in other words, the law library consisted of "a box of books on a counter and the shelf of old federal books." [rec. doc. 5, pp. 18-27] He provided another series of affidavits which stated, (1) MPDC inmates are prohibited from writing ARP grievances; (2) inmates who do so are threatened with administrative detention or with being maced; and, (3) inmates at MPDC are maced everyday for complaining about medical care or the law library. [rec. doc. 5, pp. 41-50]

*Law and Analysis*

*1. Screening*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A;

7

28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff has filed an original complaint, an amended complaint, and numerous exhibits in

support of his claims; his pleadings and exhibits allege facts sufficient to conduct and conclude a preliminary screening pursuant to §1915. Accepting all of plaintiff's allegations as true, the undersigned concludes, for the reasons stated hereinafter, that his complaint should be dismissed as frivolous and for failing to state a claim for which relief might be granted.

## 2. Administrative Remedies

Plaintiff claims that the defendants have violated his rights by failing to provide adequate administrative remedies procedures. Such allegations, even if true, fail to state a claim for which relief might be granted since prisoners do not have a constitutionally protected right to a grievance procedure. The narrowing of prisoner due process protections announced in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), left prisoners without a federally-protected right to have grievances investigated and resolved. Any right of that nature is grounded in state law or regulation and the mere failure of an official to follow state law or regulation, without more, does not violate constitutional *minima*. See *Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. Feb.12, 2004) (not designated for publication) (holding that "claims that the defendants violated ... constitutional rights by failing to investigate ... grievances fall short of establishing a federal constitutional claim"). See also *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (Burger, C.J., concurring) (applauding the institution of grievance procedures by prisons but not suggesting that such procedures are constitutionally required). Since plaintiff has no constitutionally protected right to a prison grievance procedure, his complaint fails to state a claim for which relief may be granted.

## 3. Access to Courts

In addition, the facts so far alleged, construed in the light most favorable to the plaintiff,

simply do not support plaintiff's assertion that he has been denied his right of access to the courts. The right of access to the courts assures that no prisoner will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights. *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996); *Norton v. Dimazana*, 122 F.3d 286, 289 (5th Cir.1997).

However, prison officials have considerable discretion in choosing the mechanism and forms of assistance they will furnish to prisoners for the purpose of allowing prisoners to file non-frivolous legal claims. See *Lewis v. Casey*, 518 U.S. at 356, 116 S.Ct. at 2182, ("Of course, we leave it to prison officials to determine how best to ensure that inmates... have a reasonably adequate opportunity to file non-frivolous legal claims challenging their convictions or conditions of confinement.")

Plaintiff's allegations, construed liberally and all taken as true for the purposes of this review, fail to demonstrate that the defendants denied him access to the courts as that term is defined in the jurisprudence cited above. The Supreme Court has not extended the right to access the courts to encompass any more than the ability of an inmate to prepare and transmit a necessary legal document to a court. *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993), cert. denied, 510 U.S. 1123, 114 S.Ct. 1081, 127 L.Ed.2d 397 (1994) (citing *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Cgt. 2963, 41 L.Ed.2d 935 (1974) and *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974)); see also *Lewis v. Casey*, 518 U.S. at 354 , 116 S.Ct. at 2181 ("It must be acknowledged that several statements in *Bounds* [*vs. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)] went beyond the right of access recognized in the earlier cases on which it relied, <u>which was a right to bring to court a grievance that the inmate wished to present</u>,

see, e.g., *Ex parte Hull*, 312 U.S., at 547-548, 61 S.Ct., at 640-641; *Griffin v. Illinois*, 351 U.S., at 13-16, 76 S.Ct., at 588-589; *Johnson v. Avery*, 393 U.S., at 489, 89 S.Ct., at 750-751. <u>These statements appear to suggest that the State must enable the prisoner to discover grievances, and to litigate effectively once in court.</u> See *Bounds*, 430 U.S., at 825-826, and n. 14, 97 S.Ct., at 1497, and n. 14. <u>These elaborations upon the right of access to the courts have no antecedent in our pre- *Bounds* cases, and we now disclaim them</u>. To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is effectively to demand permanent provision of counsel, which we do not believe the Constitution requires"); *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996).

Clearly, plaintiff has not shown that he has been denied that right. Indeed, by his own admission, plaintiff filed an application for post-conviction relief in the District Court, an application for writ of mandamus in the First Circuit Court of Appeals, and an application for writs in the Louisiana Supreme Court. That these pleadings have been unsuccessful is of no moment. Pursuant to the contours described by the jurisprudence, plaintiff simply was not denied "access to courts."

Further, even assuming that plaintiff would be able to demonstrate that the defendant somehow deprived him of his constitutional right of access to the courts, he must still allege facts to establish that he suffered some prejudice as a result of the deprivation. See *Lewis v. Casey*, 518 U.S. at 350-355, 116 S.Ct. at 2179- 81; *Eason v. Thaler*, 73 F.3d at 1328; *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir.1992), *cert. denied*, 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992); and

11

*Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir.1988). In *Lewis v. Casey*, the Court noted that prior "access to courts" jurisprudence "...did not create an abstract, freestanding right to a law library or legal assistance...", and that "...an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense..." The Supreme Court reaffirmed the longstanding requirement that inmates claiming a violation of their right of access must show actual injury. *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180. The Court also provided examples of "actual injury" noting, "[The inmate] might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered some arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id.*

Plaintiff has wholly failed to allege any <u>specific</u> facts establishing that he was <u>actually prejudiced</u> in connection with his post-conviction proceedings. Instead, he has provided on conclusory statements, i.e., that the inadequacies of the law library insured that his post-conviction litigation " ... was destined to fail from the very beginning..." Plaintiff has not shown that he was denied access to the courts. His complaint fails to state a claim for which relief may be granted and is frivolous.

*4. Conclusion*

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted in

accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers at Monroe, Louisiana, this 24th day of September, 2008.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE